IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMBER M. H.,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>KILOLO KIJAKAZI,<br>Commissioner of Social Security,<br><br>　　　　　　Defendant. | CV 22-128-M-DLC-KLD<br><br><br>FINDINGS AND<br>RECOMMENDATION |

Plaintiff brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 *et seq*.

**I.     Procedural Background**

Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income in November 2019, alleging disability since September 27, 2018, based on physical and mental impairments. (Doc. 9, at 31–32). Plaintiff's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. (Doc. 9, at 31–32). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision

dated April 14, 2021, the agency's final decision for purposes of judicial review. (Doc. 10, at 5–7). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.   Legal Standards

### A.   Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability

determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.   Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). *See also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act.

At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, she must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to

establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.  <u>Discussion</u>

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021. (Doc. 9, at 34). The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the September 27, 2018, the alleged onset date. (Doc. 9, at 34). At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis (MS), fibromyalgia, carpal tunnel syndrome, and left ulnar neuropathy. (Doc. 9, at 34). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments, 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. pt. 404, subpt. P, app. 1. (Doc. 9, at 36).

The ALJ then found that Plaintiff had the Residual Functional Capacity

("RFC") to perform a range of medium work as follows:

> [The claimant] can lift/carry/push/pull 20 pounds occasionally and
> ten pounds frequently; stand and/or walk for about four hours in an
> eight-hour workday with normal work breaks; sit for about 6 hours in
> an 8-hour workday with normal work breaks; frequently handle,
> finger, and feel bilaterally; and occasionally climb ramps and stairs,
> ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl.
> The claimant must avoid concentrated exposure to extreme cold and
> vibration, even moderate exposure (rare) to extreme heat and hazards,
> including slippery/rough surfaces, narrow surfaces, unprotected
> heights, and dangerous machinery, and she can tolerate exposure to
> noise levels no greater than three out of five on the scale set forth in
> the Dictionary of Occupational Titles and the SCO (*i.e.*, no greater
> than moderate noise levels). The claimant requires normal breaks,
> defined as occurring every two hours with two breaks lasting at least
> ten minutes and one lasting at least 30 minutes. She can understand,
> remember, and carry out simple, detailed, complex tasks; can
> maintain attention, concentration, persistence, pace for such 8-hour
> workdays and 40-hour workweeks; and can tolerate interaction with
> supervisors, coworkers, and the public, usual work situations, and
> changes in routine work settings.

(Doc. 9, at 37). At step four, the ALJ determined that Plaintiff was able to perform

past relevant work as a sales agent. (Doc. 9, at 42). Alternatively, proceeding to

step five, the ALJ found based on the vocational expert's testimony that other jobs

exist in significant numbers in the national economy that Plaintiff could perform.

(Doc. 9, at 43).

Plaintiff argues the ALJ's decision to deny her disability benefits is not

supported by substantial evidence, and raises two main issues on appeal. First,

Plaintiff argues the ALJ did not provide clear and convincing reasons for

discounting her subjective testimony. (Doc. 15, at 6). Second, Plaintiff argues the ALJ improperly discounted the medical opinion evidence of Plaintiff's treating neurologist, Dr. Kurt Lindsay. (Doc. 15, at 13). The Court addresses these arguments in the order set forth below.

### A.    Subjective Symptom Testimony

Plaintiff argues the ALJ did not provide clear and convincing reasons for discounting her subjective testimony as to the severity of her symptoms and limitations. The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

If the ALJ provides at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility

determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gillian v. Saulk*, 821 F. App'x 798, 799 (9th Cir. 2020) (if the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless"). "There is, however, one important caveat to this rule: [a] lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony." *Joshua P.*, 2021WL 4330858, at *3 (citing *Valdez v. Berryhill*, 746 F.App'x 676, 677 (9th Cir. 2018) (stating that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason"). *See also Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).

Here, the ALJ found Plaintiff met her initial burden because she produced evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. The ALJ then found that Plaintiff's statements concerning the intensity, persistence, and the limiting effects of her symptoms were not entirely consistent with the medical and other evidence in the record. (Doc. 9 at  39).

At her administrative hearing, Plaintiff testified that she could not work due to worsening symptoms since the denial of her Title II and Title XVI applications, including increased headaches, problems with vision, urinary frequency, fatigue,

digestive problems, and numbness in her arms, hands, and legs, as well as increased muscle spasms. (Doc. 9, at 57–58, 62, 66). She estimated that she would be unable to lift more than five pounds or stand for more than five minutes before needing to sit, sit for no more than ten to 15 minutes before needing to lie on her back, and walk for about half a block before needing to sit. (Doc. 9, at 59, 61–62). She stated that she lived with her parents, who sometimes helped her get in the shower, brush her hair, and dress, and that she napped each day for one to two hours. (Doc. 9, at 59, 67). Plaintiff reported using over-the-counter medication to manage her headaches, in addition to prescription medication for migraines. (Doc. 9, at 62).

In March 2020, Plaintiff completed a function report in which she stated she could not work due to bilateral carpal tunnel syndrome, weakness and numbness in her arms and legs, headaches, and tremors, as well as problems associated with fatigue, memory, bladder, speech, coordination, heavy periods, depression, chronic thrush, anxiety, and acid reflux. (Doc. 9, at 293). Plaintiff also completed a headache questionnaire in March 2020, in which she described suffering from dizziness, motion sickness, stomach issues, diarrhea, pounding headaches (described as "sledgehammer on head"), and blurry vision. (Doc. 9, at 291).

The ALJ summarized Plaintiff's subjective testimony, but discredited her statements as to the severity of her symptoms and limitations for several reasons, at least one of which is supported by substantial evidence.

First, the ALJ determined the objective studies support that Plaintiff did not need additional limitations beyond the ALJ's RFC assessment. In making that determination, the ALJ found it significant that an April 2019 EMG/NCS study showed median nerve entrapment of the bilateral carpal tunnels was "very mild" and that left ulnar neuropathy at the elbow was "mild." (Doc. 9, at 511). Acknowledging Plaintiff's repeat brain MRI in November 2019, the ALJ noted the study demonstrated new areas of FLAIR hypersensitivity in the right frontal lobe, compatible with the known diagnosis of MS, but noted there were no enhancing lesions and an MRI cord survey detected no spinal cord lesions, and concluded imaging findings were similar to the prior study. (Doc. 9, at 607–09).

Next, the ALJ determined that the physical findings corroborated the objective studies and supported Plaintiff was not disabled. Citing office visits with Dr. Hall, Plaintiff's primary care physician, in October 2018 and December 2019, the ALJ noted that Plaintiff was well appearing and demonstrated normal gait, strength, reflexes, and sensation. (Doc. 9, at 356, 370). Additionally, the ALJ relied on exams by Dr. Lindsay, Plaintiff's treating neurologist, which consistently found Plaintiff's visual fields full to finger counting, facial sensation and hearing intact,

and 5/5 strength in the upper and lower extremities with normal bulk and tone. (Doc. 9, at 508, 515, 585, 621). Except for sensory decrease to all modalities in the fingertips, Dr. Lindsay consistently found that sensation was grossly intact to fine touch in the upper and lower extremities, rapid alternating movements were within normal limits, and there was no tremor. (Doc. 9, at 508, 515, 585, 621).

Further, the ALJ noted that Plaintiff required no more than routine and conservative treatment, which was at least somewhat effective in managing her symptoms. For example, Plaintiff treated her headaches with Triptan and her MS with Copaxone injections (Doc. 9, at 513) until November 2019 when Dr. Lindsay transitioned her to Tecfidera after noting new lesions on the frontal lobe and Plaintiff's report of "somewhat worse" headaches. (Doc. 9, at 505). Dr. Lindsay also noted Plaintiff had ongoing issues with the Copaxone subcutaneous injections causing irritation at the injection site. (Doc. 9, at 505). The ALJ noted Dr. Lindsay reported Plaintiff tolerated Tecfidera well after transitioning to that medication. (Doc. 9, at 584).

Finally, the ALJ discounted Plaintiff's testimony based on her daily activities, which the ALJ found detracted from Plaintiff's allegations of disabling physical impairment. For example, despite complaints about energy levels and memory, Plaintiff stated she could go outside alone, feed and clean up after pets,

make simple meals, clean and vacuum the house, use a computer to play games and research illnesses, read, and watch television. (Doc. 9, at 293–97).

The Court finds that the ALJ provided specific, clear and convincing reasons for determining that Plaintiff's medical records were not entirely consistent with her testimony that she could not work due to the severity of her symptoms. *Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for the rejecting the claimant's subjective testimony.").

First, the record contains objective findings that contradict Plaintiff's testimony regarding the disabling degree of her mental and physical function. In particular, the ALJ found that Plaintiff's alleged severe anxiety and memory issues were undermined by routine treatment notes that reflect Plaintiff was alert and oriented, her mood was euthymic, her speech was fluent and articulate, and her memory intact. (Doc. 9, at 39 (citing Doc. 9, at 508, 515, 621). *See also* Doc. 9, at 468, 583, 585, 588, 597, 621). In contrast to her testimony that she has severe mobility issues, including difficulty turning doorknobs, holding onto objects, or lifting more than five pounds (Doc. 9, at 59), the ALJ noted that the record repeatedly shows that Plaintiff only suffers from mild nerve entrapment and neuropathy, and has normal strength and muscle tone, and sensation is grossly intact. (*See* Doc. 9, at 508, 511, 515, 583, 585, 588, 597, 621).

While these are somewhat cursory findings, they nonetheless support the ALJ's reasoning that if Plaintiff were as limited alleged, even such routine medical examination findings would consistently reflect more significant abnormalities. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff primarily takes issue with the ALJ's reliance on the absence of enhancing lesions on Plaintiff's November 2019 brain MRI, arguing that the presence of new lesions in the frontal lobe is not inconsistent with Plaintiff's asserted increase in symptoms and the lack of enhancing lesions is not material as it only determines the age of the lesions. (Doc. 15, at 9). Plaintiff further argues that the ALJ was required to identify specific alternative treatment options for Plaintiff's MS before finding her testimony inconsistent based on the conservative treatment she received. (Doc. 15, at 11).

Plaintiff's argument oversimplifies the ALJ's findings. The ALJ acknowledged that Plaintiff's complaints of headaches were consistent with her MS diagnosis. Further, the ALJ did not discredit Plaintiff's testimony merely because she received only routine, conservative treatment for her MS. The ALJ noted that Plaintiff had changed medications after experiencing site reactions and

reporting an increase in headaches, but as the ALJ articulated, the record reflects the conservative treatment Plaintiff received was effective in managing her symptoms. As the ALJ noted, this reasoning finds support in both the physical findings in the record and is consistent with Plaintiff's reported daily activities, which indicate she is largely self-sufficient in her daily routine. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (holding that an ALJ can consider a claimant's ability to perform daily activities when assessing subjective symptom testimony).

Finally, Plaintiff argues that the ALJ failed to explain how Plaintiff's limited ability to perform some self-care and household tasks, depending on the severity of her symptoms, is inconsistent with her testimony. (Doc. 15, at 12). But even assuming this particular reason is not supported by substantial evidence, as discussed above, the ALJ provided at least one other reason that is supported by substantial evidence for finding Plaintiff's testimony less than credible as to the severity of her symptoms.

The Court finds that the ALJ reasonably explained how the medical records contradicted Plaintiff's subjective testimony as to the severity of her symptoms and limitations in light of her routine and conservative treatment. The ALJ pointed to sufficiently specific medical reports in the record to indicate Plaintiff's conditions were largely well-managed, thus reasonably found unreliable her subjective testimony as to the debilitating extent of her symptoms and limitations—such as

vision and concentration issues, problems tying her shoes, typing, and reaching for things. The Court may not substitute its own interpretation of the evidence for the ALJ's rational interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th. Cir. 2002). *See also Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (Even if the record is "susceptible to more than one rational interpretation, if the ALJ's decision is supported by substantial evidence it must be upheld."). Because the ALJ provided at least one valid reason to discount the claimant's testimony, any error in the remaining reasons is harmless. *See e.g. Joshua P. Kijakazi*, 2021 WL 4330858, at *3 (D. Or. Sept. 23, 2021) (citing *Sims v. Berryhill*, 704 App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's adverse credibility determination because the ALJ "provided at least one clear and convincing reasons supported by substantial evidence for rejecting [it] as not credible") and *Gillian v. Saulk*, 821 F. App'x 798, 799 (9th Cir. 2020) (if the ALJ provides "at least one valid reason to discount [a claimant's symptom] testimony, error in the remaining reasons is harmless").

For these reasons, the Court concludes the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, for discounting Plaintiff's subjective testimony.

**B.    Medical Opinion Evidence**

Plaintiff next argues the ALJ failed to provide adequate reasons based on substantial evidence for discounting the medical opinion of Plaintiff's treating neurologist, Dr. Lindsay. For all claims filed after March 27, 2017, the Social Security Administration has amended the rules regarding the evaluation of medical opinion evidence at the administrative level. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Because Plaintiff filed her claims for disability benefits in November 2019, the amended regulations apply.

Under the new regulations, the ALJ "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867–68 (Jan. 18, 2017). *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). These regulations do away with the traditional hierarchy between treating, examining, and non-examining physicians, and instead direct the ALJ to consider all medical opinions and prior administrative medical findings, and evaluate their persuasiveness using several listed factors. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Those factors include supportability, consistency, relationship with the claimant, specialization, and

"other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c), 416.920(c).

The regulations require the ALJ to articulate how persuasive she finds all of the medical opinions and prior administrative medical findings, and set forth specific "articulation requirements" for the ALJ's evaluation of the medical opinion evidence. 20 C.F.R. §§ 404.1520c(b), 416.920(b). When one medical source provides multiple opinions, the ALJ is not required to articulate how she "considered all of the factors for all of the medical opinions" and will instead articulate how she considered those opinions "together in a single analysis using the factors" listed above. 20 C.F.R. §§ 404.1520c(b)(1), 416.920(b)(1).

The two most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920(a). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical findings, the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(1), 416.920c(c)(1). Consistency means the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Because supportability and consistency are the most important factors, the ALJ must

explain how she considered these factors in the decision. Generally, the ALJ is not required to explain how she considered the remaining factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920(b)(2).

While the new regulations eliminate the hierarchy between treating, examining, and non-examining medical sources, the ALJ must still provide legally sufficient reasons supported by substantial evidence for finding a medical opinion unpersuasive. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). The "new regulations still require the ALJ to explain his or her reasoning to specifically address how he or she considered the supportability and consistency of the medical opinion." *Brandee M. v. Saul*, 2021 WL 2781803, at *3 (C.D. Cal. July 1, 2021) (citing 20 C.F.R. §§ 404.1520c, 416.920c). Statements on issues reserved to the Commissioner, such as whether a claimant is able to work, are "inherently neither valuable nor persuasive." 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i).

Here, the ALJ found Dr. Lindsay's assessment of Plaintiff's physical functional capacity limitations unpersuasive because Dr. Lindsay's treatment notes did not support his finding that Plaintiff could perform less than the full range of sedentary work, and his assessment was overall inconsistent with the normal

physical exam findings by Dr. Hall in October 2018 and December 2019. (Doc. 9, at 41). Dr. Lindsay's assessment concluded Plaintiff's symptoms were so severe that Plaintiff would need frequent breaks; could only occasionally lift up to ten pounds, reach in front for just ten percent of the day, and reach overhead for just five percent of the day; and was incapable of even "low stress" work. (Doc. 9, at 635–39). However, pointing to Dr. Lindsay's own treatment notes, the ALJ explained that other than noting a wide-based and somewhat antalgic gait and sensory decrease to all modalities in the fingertips, Dr. Lindsay's physical exam findings "were normal, including otherwise intact sensation, 5/5 strength in the upper and lower extremities with normal bulk and tone, and rapid alternating movements within normal limits." (Doc. 9, at 41 (citing Doc. 9, at 508, 515, 585, 621)).

The ALJ also found Dr. Lindsay's assessment inconsistent with treatment notes from Dr. Hall, which routinely found that Plaintiff was well appearing and demonstrated normal gait, strength, reflexes, and sensation. (Doc. 9, at 356, 370). Additionally, the ALJ correctly noted Dr. Lindsay's opinion that the Plaintiff was unable to work due to "a combination of headache burden, anxiety/depression, and MS-related 'disability'" was "inherently neither valuable nor persuasive." (Doc. 9, at 41 (citing 20 C.F.R. §§ 404.1520b(c)(3)(i), 416.920b(c)(3)(i))).

Plaintiff argues that the ALJ failed to understand the progression of Plaintiff's MS symptoms, and should have credited Dr. Lindsay's opinion because it is supported by Plaintiff's reports of fatigue, joint and muscle pain, intermittent paresthesia, headaches, and worsening anxiety. (Doc. 15, at 16 (citing Doc. 9, at 507 and 584)). However, Plaintiff's own subjective reports of symptoms are not "objective medical evidence" on which a medical opinion must rely. The supportability analysis considers the objective medical evidence and explanations that form the basis of the medical opinion, not whether a doctor's opinion is consistent with a claimant's subjective reports. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Importantly, these same treatment notes to which Plaintiff cites include both Plaintiff's self-reported symptoms and Dr. Lindsay's physical examinations relied on by the ALJ, which are inconsistent. (*See* Doc. 9, at 508, 585).

Plaintiff further argues Dr. Lindsay's assessment is consistent with Dr. Hall's treatment for Plaintiff's heavy and abnormal periods, which Plaintiff claims exacerbated her MS symptoms. (Doc. 15, at 16). However, Dr. Lindsay's report does not rely on, or even reference, Plaintiff's menorrhagia, and the ALJ considered it, finding that Plaintiff was treating the condition with oral contraception and the condition presented no more than a minimal effect on Plaintiff's ability to perform basic work activities. (Doc. 9, at 34).

Finally, Plaintiff maintains that Dr. Lindsay's medical opinion is consistent with both Dr. Hall's references to anxiety and depression and Plaintiff's mental health counselor's treatment notes, which repeatedly discuss Plaintiff's self-reports of anxiety, depression, and poor stress tolerance, as well as physical symptoms such as fatigue, poor sleep, chronic headaches, weight loss, shakiness, dizziness, and nausea. (Doc. 470–94, 518–19, 560–67). Again, the ALJ considered Plaintiff's anxiety, depression, and problems with substance abuse, both individually and in combination, finding they were non-severe. (Doc. 9, at 35–35). Plaintiff does not dispute that finding, which is supported by ample evidence in the record and largely inconsistent with Dr. Lindsay's medical opinion.

The Court also notes that Plaintiff does not take issue with the ALJ's determination that the other less restrictive medical opinions in the record were persuasive. As required by 20 C.F.R. §§ 404.1520c(b), 416.920(b), the ALJ considered the Physical Residual Functional Capacity assessments completed by State agency medical consultants Benjamin Cortijo, M.D., in May 2020, and R. Hull, M.D., in June 2021, which both found that Plaintiff could perform light work. (Doc. 9, at 40). Additionally, the ALJ considered the Psychiatric Review Technique and Mental Residual Functional Capacity assessments completed by State agency psychological consultant Carlos Jusino-Berrios, M.D., in May 2020, and R. Bateen. Ph.D., in June 2021, finding Dr. Bateen's assessment of non-severe

mental impairment persuasive based on the generally normal mental status findings in the record despite Plaintiff's report of psychiatric symptoms, typically in the context of situational stress including alcohol withdrawal. (Doc. 9, at 40–41).

Plaintiff has the burden of showing that her impairments significantly impact her ability to work, and the ALJ is not required to find that every diagnosis identified in the record is a severe impairment. *See e.g. Langdon v. Berryhill*, 2017 WL 3188616, at *2 (W.D. Wash. July 26, 2017). Nor is the ALJ required to discuss every treatment note in the record. *See Schmitz v. Saul*, 857 Fed. App'x 368 (9th Cir. May 21, 2021) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984)). The regulations require the ALJ adequately articulate how persuasive she found all of the medical opinions and prior administrative medical findings. 20 C.F.R. §§ 404.1520c(b), 416.920(b). Where the evidence is susceptible to more than one rational interpretation, one of the which supports the ALJ's decision, the ALJ's conclusion must be upheld. *See e.g. Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The ALJ reasonably interpreted the medical evidence in the record, which documented mostly normal physical examination findings. The ALJ's evaluation of Dr. Lindsay's findings, in particular, is supported by substantial evidence. Accordingly, the ALJ properly supported her finding that Dr. Lindsay's medical opinion was unsupported, inconsistent, and ultimately unpersuasive.

IV.   **Conclusion**

For the reasons discussed above, the Court finds the ALJ's decision denying Plaintiff's claims for disability insurance benefits and supplemental security is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 6th day of October, 2023.

Kathleen L. DeSoto
United States Magistrate Judge