IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| AMBER MARIE HANSON, | CV 22–128–M–DLC |
| Plaintiff, | |
| v. | ORDER |
| MARTIN J. O'MALLEY, *Commissioner of Social Security*, | |
| Defendant. | |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation. (Doc. 21.) Judge DeSoto entered her Findings and Recommendation on October 6, 2023, recommending that Defendant Commissioner of Social Security's (the "Commissioner") decision denying Plaintiff Amber Marie Hanson's applications for disability insurance and supplemental social security benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.*, be affirmed. (*Id.* at 23.)

Plaintiff timely filed objections to the Findings and Recommendation. (Doc. 22.) Consequently, Plaintiff is entitled to *de novo* review of those findings and recommendations to which she has specifically objected. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). A proper objection must "itemize" each factual finding and

1

recommendation to which objection is made, "identifying the evidence in the record the party relies on to contradict that finding . . . [and] setting forth the authority the party relies on to contradict that recommendation."  D. Mont. L.R. Civ. 72.3(a) (Dec. 1, 2023).  Absent objection, the Court reviews findings and recommendations for clear error.  *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981).  Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed."  *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

## PROCEDURAL BACKGROUND

On November 12, 2019, Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income alleging disability beginning September 27, 2018.  (Doc. 9 at 31.)  These claims were denied initially on May 6, 2020, and upon reconsideration on June 26, 2020.  (*Id.*)  On March 4, 2021, an administrative hearing was held before an Administrative Law Judge ("ALJ").  (*Id.*)

On April 14, 2021, the ALJ issued a decision denying Plaintiff's claims.  (*Id.* at 44.)  The ALJ followed the requisite five-step process in determining Plaintiff's disability status.  At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2021, and that Plaintiff has not engaged in substantial gainful activity since the alleged onset date.

(*Id.* at 34.)  At step two, the ALJ found that Plaintiff had the following severe impairments: multiple sclerosis (MS), fibromyalgia, carpal tunnel syndrome, and left ulnar neuropathy.  (*Id.*)  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the Listing of Impairments.  (*Id.* at 36.)  The ALJ next found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work as follows:

> [The claimant] can lift/carry/push/pull 20 pounds occasionally and ten pounds frequently; stand and/or walk for about four hours in an eight-hour workday with normal work breaks; sit for about 6 hours in an 8-hour workday with normal work breaks; frequently handle, finger, and feel bilaterally; and occasionally climb ramps and stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to extreme cold and vibration, even moderate exposure (rare) to extreme heat and hazards, including slippery/rough surfaces, narrow surfaces, unprotected heights, and dangerous machinery, and she can tolerate exposure to noise levels no greater than three out of five on the scale set forth in the Dictionary of Occupational Titles and the SCO (*i.e.*, no greater than moderate noise levels). The claimant requires normal breaks, defined as occurring every two hours with two breaks lasting at least ten minutes and one lasting at least 30 minutes. She can understand, remember, and carry out simple, detailed, complex tasks; can maintain attention, concentration, persistence, pace for such 8-hour workdays and 40-hour workweeks; and can tolerate interaction with supervisors, coworkers, and the public, usual work situations, and changes in routine work settings.

(*Id.* at 37.)  At step four, the ALJ found that Plaintiff was able to perform past relevant work as a sales agent.  (*Id.* at 42.)  Although the analysis could have stopped at step four, the ALJ continued to step five and concluded that other jobs

exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 43.)  Accordingly, the ALJ found that Plaintiff was not disabled.  (*Id.* at 44.)

The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  (*Id.* at 5.)  Plaintiff then sought judicial review of the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g).  (Doc. 2.)  Plaintiff requested reversal of the Commissioner's final decision on the grounds that: (1) "[t]he ALJ failed to offer clear and convincing reasons for rejecting Plaintiff's subjective complaints and testimony regarding her multiple sclerosis"; and (2) "[t]he ALJ failed to provide adequate reasons based on substantial evidence for discounting the medical opinion of Plaintiff's treating neurologist."  (Doc. 15 at 1.)

Judge DeSoto addressed Plaintiff's challenges to the ALJ's decision and found that "the ALJ's decision denying Plaintiff's claims is supported by substantial evidence and free of prejudicial legal error."  (Doc. 21 at 23.)  Specifically, with regard to Plaintiff's first challenge, Judge DeSoto found that the ALJ had provided at least one valid reason to discount Plaintiff's testimony that was supported by evidence in the record: "[t]he ALJ reasonably explained how the medical records contradicted Plaintiff's subjective testimony as to the severity of her symptoms and limitations in light of her routine and conservative treatment."  (*Id.* at 14.)  Regarding Plaintiff's second challenge, Judge DeSoto

found that the ALJ had "properly supported her finding that [Plaintiff's treating neurologist's] medical opinion was unsupported, inconsistent, and ultimately unpersuasive." (*Id.* at 22.) Therefore, Judge DeSoto recommended that the Commissioner's decision be affirmed. (*Id.* at 23.)

Plaintiff timely filed a notice of objections raising a single objection to Judge DeSoto's findings: "Plaintiff objects to the Magistrate's finding that the ALJ did not err in the evaluation of Plaintiff's symptoms regarding her multiple sclerosis." (Doc. 22 at 1.) Specifically, Plaintiff contends that Judge DeSoto's finding "that the ALJ properly relied on routine, conservative, and effective treatment of Plaintiff's MS" to discount Plaintiff's subjective symptom testimony "is not supported by the record and prevailing case law." (*Id.* at 4.) The Court reviews this specific finding *de novo* and the remaining findings for clear error.

## STANDARD OF REVIEW

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). However, the Court may set aside the ALJ's decision "only if it is not supported by substantial evidence or is based on legal error." *Id.* In other words, the Court must affirm the ALJ's decision if it is supported by "such relevant evidence as a reasonable mind might

5

accept as adequate to support a conclusion." *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006). Because the ALJ is "responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities," *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020), the Court must uphold the ALJ's decision "where evidence is susceptible to more than one rational interpretation," *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036. "[I]f the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks omitted). The ALJ need only provide one valid reason for discounting the claimant's testimony, so long as that reason is not simply a lack of supporting medical evidence. *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) ("[If the] ALJ provided at least one valid reason to discount [a claimant's symptom] testimony, error in remaining reasons is

6

harmless[.]") (citation omitted); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) (noting that an "ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason").

Plaintiff testified that since her alleged onset date she has experienced worsening symptoms, including increased headaches, fatigue, digestive problems, numbness in her arms, hands, and legs, as well as increased muscle spasms. (Doc. 9 at 58.) Plaintiff further testified that she lives with her parents who help her sometimes with getting in the shower, brushing her hair, and changing clothes. (*Id.* at 59.) Plaintiff stated that she can lift and carry five pounds comfortably, but she has some trouble with dropping things, opening jars, tying her shoes, reaching overhead on the right hand side, and typing on a keyboard. (*Id.* at 59–60.)

Plaintiff also testified that she could stand for about five minutes before needing to sit and sit for about ten or fifteen minutes before needing to lie down. (*Id.* at 61.) She reported being able to walk for about half a block before needing to sit down. (*Id.* at 62.) Plaintiff also testified that she has daily headaches, panic attacks, and her new MS medication causes her to become nauseas. (*Id.* at 62–65.) Plaintiff also reported daily headaches in a headache questionnaire completed on March 25, 2020. (*Id.* at 291.)

In a functions report dated March 25, 2020, Plaintiff stated that her ability to

7

work is limited by fatigue, carpal tunnel, memory, bladder, numbness in the legs and arms, headaches, speech, coordination, sciatica, tremors, heavy periods, depression, chronic thrush, anxiety, and acid reflux. (*Id.* at 293.) Plaintiff reported that during the day she takes naps, watches movies, feeds the dogs, feeds her nephew, and sometimes takes showers. (*Id.* at 294.) Plaintiff reported that she is able to prepare simple meals and do household chores such as cleaning the toilet and sink. (*Id.*) Plaintiff also reported that she is able to pay attention for twenty minutes to one hour but struggles to finish what she starts. (*Id.* at 298.)

The ALJ found that Plaintiff had met her initial burden by producing evidence of medically determinable impairments that could reasonably be expected to cause her alleged symptoms. (*Id.* at 39.) The ALJ did not make a finding regarding malingering, but, at step two, found that Plaintiff's statements concerning intensity, persistence, and the limiting effects of her symptoms were not entirely consistent with the evidence in the record. (*Id.*) In reaching this conclusion, the ALJ relied on objective studies, physical findings by Plaintiff's medical providers, Plaintiff's treatment, and Plaintiff's own testimony. (*Id.* at 39–41.)

Plaintiff does not dispute the inconsistencies between the medical record and Plaintiff's testimony or that these inconsistencies are relevant to the ALJ's determination. (Doc. 22 at 4.) However, Plaintiff does argue that "contradiction

with the objective medical evidence . . . 'cannot form the sole basis for discounting symptom testimony.'" (*Id.* (quoting *Burch*, 400 F.3d at 681).)  Thus, Plaintiff's only contention at this stage is that the ALJ erroneously characterized Plaintiff's MS treatment as routine, conservative, and somewhat effective and, therefore, the ALJ lacked a sufficient basis for discounting Plaintiff's subjective testimony regarding her MS.  (*Id.* at 2–3.)

First, Plaintiff misstates the rule on contradictory medical evidence.  *Burch* stands for the principle that the "*lack* of medical evidence cannot form the sole basis for discounting pain testimony."  400 F.3d at 681.  However, "*[c]ontradiction* with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (emphasis added).  Here, Judge DeSoto found that the ALJ properly identified and relied on contradictions between the objective medical evidence and Plaintiff's testimony regarding her MS.  Plaintiff does not dispute this finding and the Court finds no clear error.  Accordingly, even if the ALJ did erroneously rely on Plaintiff's treatment to discount Plaintiff's testimony, the ALJ provided at least one valid reason to discount Plaintiff's testimony, so the error would be harmless.

However, the Court also concludes that the ALJ did not err in evaluating and relying upon Plaintiff's MS treatment to discount Plaintiff's testimony.  The

amount and type of treatment received by a claimant can be an important indicator of the intensity and persistence of a claimant's symptoms.  *See* 20 C.F.R. § 404.1529(c)(3); *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Here, the ALJ determined that Plaintiff "required no more than routine and conservative treatment, which was at least somewhat effective," (Doc. 9 at 39), and the ALJ's determination is supported by substantial evidence in the record.

As the ALJ noted, Plaintiff received Copaxone medication for her multiple sclerosis and experienced no "new MS-related issues," (*id.* at 124), or "acute exacerbation" of MS symptoms, (*id.* at 513), for a lengthy period while on that medication.  In November 2019, Plaintiff was transitioned to Tecfidera to address her MS after one of Plaintiff's providers noted new, non-enhancing lesions on Plaintiff's frontal lobe and Plaintiff reported somewhat worsening headaches.  (*Id.* at 505, 608–09.)  Plaintiff reported tolerating the new medication "ok," with some mild nausea.  (*Id.* at 587.)  Following the switch to Tecfidera, Plaintiff continued to maintain the same physical capacity.  (*Compare id.* at 514, *with id.* at 620.)

Contrary to Plaintiff's argument, the ALJ did not discount Plaintiff's testimony because she declined to pursue more aggressive treatment. (*See* Doc. 22 at 2.) Rather, the ALJ concluded that Plaintiff only *required* conservative treatment in order to effectively manage her MS symptoms. The Court is also unpersuaded by Plaintiff's argument that the ALJ was required to find that Plaintiff's treatment *improved* her MS condition in order to be considered effective. (*See id.* at 3.) It is sufficient that Plaintiff's treatment stabilized her MS symptoms. *See, e.g.*, *Joseph O. v. Saul*, No. CV 18-5584-KS, 2019 WL 13026775, at *13 (C.D. Cal. Sept. 13, 2019) (finding substantial evidence in the record to support the ALJ's finding that Plaintiff's condition was stabilized with medication and was therefore being "effectively managed with conservative treatment").

## CONCLUSION

The Court finds that the ALJ provided specific, clear and convincing reasons, supported by the record, for discounting Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of her MS symptoms. These reasons include both the contradictions between the medical record and Plaintiff's testimony as well as the routine, conservative, and somewhat effective nature of Plaintiff's treatment. Reviewing the remainder of Judge DeSoto's findings and recommendation for clear error, the Court finds none.

Accordingly, IT IS ORDERED that Judge DeSoto's Findings and Recommendation (Doc. 21) are ADOPTED IN FULL.  The Commissioner's decision is AFFIRMED, and this case is DISMISSED.  The Clerk of Court shall close this matter and enter judgment in favor of the Commissioner pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DATED this 11th day of March, 2024.

_____
Dana L. Christensen, District Judge
United States District Court